JjLEON A. CANNIZZARO, JR., Judge.
The appellant in this case, Jerome J. Pellerin, has appealed the trial court’s determination of the amount of monthly child support that he owes. We affirm the trial court’s determination.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
Frankie Faulkner Pellerin filed a petition seeking a divorce from Jerome J. Pellerin. The Pellerins are the parents of two minor sons. In her petition for divorce, Ms. Pellerin requested joint custody of the children, child support, alimony pendente lite, and use of the family residence. After the petition for divorce was filed, there were a number of developments in this case, including two prior appeals to this Court.[1]
The following list shows the dates and events that are salient to the instant appeal:

August 8,1996

Ms. Pellerin filed a Petition for Divorce seeking a divorce from Mr. Pellerin.

Ii,October 28,1996:

Mr. and Ms. Pellerin executed a Consent Judgment, which stated as follows:
IT IS ORDERED, ADJUDGED AND DECREED that Jerome J. Pelle-rin shall pay one thousand ($1000.00) dollars monthly for the support of the two minor children of the marriage .... Jerome Pellerin shall pay the mortgage on the family home directly and deduct that from this amount from the agreed upon child support. The balance of the child support shall be sent directly to Frankie Pellerin....
*769 ... Jerome Pellerin shall be given credit for all child support payments made and all tuition paid for the 1996-97 school year.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that this amount of child support is agreed to by both parties as an interim amount only and neither shall be prejudiced at the hearing for child support, should they be eligible for an increase or decrease.
The Consent Judgment also granted the Pellerins joint custody of their sons.

January 10,1997

Ms. Pellerin filed a rule to show cause why Mr. Pellerin should not be required to pay the December 1996 and the January 1997 mortgage payments according to the Consent Judgment.[2]

March 21,1997

After a trial on Ms. Pellerin’s motion for child support[3] and alimony pendente lite, the trial court rendered a judgment (the “Support Judgment”) reading in relevant part as follows:
IT IS ORDERED, ADJUDGED AND DECREED that Jerome Pellerin shall pay $1,879.35 per month in Child Support for the maintenance and support of the | ¡¡minor children. This order is retroactive to August 8, 1996 and is payable on the 1st day of every month.
IT IS ORDERED, ADJUDGED AND DECREED that Jerome Pellerin shall pay $2,000 per month in Alimony Pendente Lite. This order is retroactive to August 18[sic], 1996 and payable on the 1st day of every month.

March 26,1997

Ms. Pellerin filed a motion for an expedited hearing requesting the trial court to require Mr. Pellerin to show cause why, among other things, he should not be held in contempt of court for failing to comply with the Consent Judgment and why he should not be required to pay the mortgage payments due on the family residence through April of 1997.

May 16,1997

Mr. Pellerin was granted a devolutive appeal from the Support Judgment.

July 7,1997

A consent judgment was rendered ordering Mr. Pellerin to pay the mortgage payments due on the family residence for the months of February, March, and April of 1997.

August 4,1997

Ms. Pellerin filed a motion for an expedited hearing alleging that Mr. Pellerin had failed to pay the mortgage payment on the family residence for the months of July and August, 1997, and that he had made only a partial payment for the month of June 1997. Ms. Pellerin asked that Mr. Pellerin be ordered to pay “the mortgage on the family home and all late charges through August, 1997” or, in the alternative, that he pay “child support and alimony pendente lite ... retroactive to August 8, 1997.” Ms. Pellerin also asked that Mr. Pellerin be held in contempt of court for failing to pay child support in accordance with the terms of the Consent | ¿Judgment and the Support Judgment. She further asked that Mr. Pellerin be ordered to pay all unpaid child support payments as of the *770 date of the hearing on her motion, interest on the delinquent payments, and the attorneys’ fees and court costs incurred in collecting the amounts due.

October 1,1997

A judgment was rendered finding Mr. Pellerin to be in contempt of court for failing to pay the child support and mortgage payments he owed. He was sentenced to sixty days in jail, but the sentence was suspended. Mr. Pellerin was given seven days to purge himself of contempt by “payment of all arreagages [sic] thru October 1,1997.”

December 3,1997

Ms. Pellerin filed a rule requesting an expedited hearing, because Mr. Pellerin had not paid the mortgage payments for November or December of 1997. Ms. Pellerin alleged that the family residence was in danger of foreclosure. Ms. Pellerin asked the trial court to order Mr. Pellerin to pay the unpaid mortgage payments and all late charges due through December 1997. She also asked that he pay all unpaid child ' support payments that were due, interest on those amounts, and the attorneys’ fees and court costs incurred by Ms. Pellerin in enforcing her rights.

December 19,1997

A judgment was rendered[4] finding Mr. Pellerin to be in contempt of court. Mr. Pellerin was sentenced to thirty days in jail, but the sentence was suspended. Mr. Pellerin was given until December 22,1997 to purge himself of contempt by | s“payment of the mortgage.” Mr. Pellerin was also ordered to pay the attorneys’ fees and court costs incurred by Ms. Pellerin in connection with the contempt proceeding.

February 3,1998

Ms. Pellerin filed a rule requesting an expedited hearing, because Mr. Pellerin had not paid the January and February mortgage payments for 1998. Ms. Pellerin feared that the mortgage holder would foreclose on the mortgage on the family residence if the payments were not made. Additionally, Ms. Pellerin alleged that Mr. Pellerin had not yet paid the attorneys’ fees and court costs that had been awarded to her in the December 19, 1997 judgment. Ms. Pellerin asked the trial court to order Mr. Pellerin to show cause why, among other things, (1) he should not be held in contempt for failing to pay child support “in accordance with the terms of the October 28, 1996 Consent Judgment”; (2) he should not pay the mortgage on the family residence and all late charges “through December, 1997”; (3) he should not pay the attorneys fees and court costs that he had been ordered to pay previously; and (4) he should not be ordered to pay “all unpaid child support payments due and payable as of the date of the hearing of this matter.”

February 17,1998

A judgment was rendered[5] finding Mr. Pellerin to be in contempt of court “for failure to timely pay the child support in compliance with the Consent Judgment of October 28, 1996.” Mr. Pellerin was sentenced to thirty days in jail, and he was required to post a cash bond in the amount of $3,000.00, which was to | fibe used to pay the January and February, 1998 mortgage payments on the family residence and the attorneys’ fees and costs owed to Ms. Pellerin.

*771
February 26,1998

The trial court judge issued reasons for judgment in which he noted that “[sjince entering into that Interim Consent Judgment five Motions for Expedited Hearings and/or Rules to Show Cause have been filed against Mr. Pellerin for his failure to timely pay his child support by timely paying the mortgage on the community home.” The trial court also stated that Mr. Pellerin failed to make the payments that were ordered within the time limits prescribed by the court. Further, the trial judge stated that in one instance Mr. Pellerin did not make the payment that was ordered until after an attachment for his arrest was issued.

June 17,1998

In Pellerin v. Pellerin, 97-2085 (La.App. 4 Cir. 6/17/98), 715 So.2d 617, writ denied, 98-1940 (La.10/30/98), 727 So.2d 1167, this Court affirmed the child support award of $1,879.85 that had been granted in the Support Judgment but determined that the award was not retroactive to August 8, 1996, when the petition for divorce had been filed. Instead, the child support award was effective as of the date that the Support Judgment had been rendered. This Court reduced the amount of alimony pendente lite[6] that had been granted in the Support Judgment but determined that this award was retroactive to the date that the petition for divorce was filed.
| June 26,1998
Ms. Pellerin filed a rule for an expedited hearing to show cause why Mr. Pellerin should not be held in contempt of court for failing to pay the June 1998 mortgage payment and child support in accordance with the Consent Judgment.
January 20,1999[7]
Ms. Pellerin filed a rule (the “Enforcement Rule”) in which she sought to enforce the Support Judgment ordering Mr. Pelle-rin to pay $1,879.35 per month for child support, as that judgment was modified by the opinion of this Court. Ms. Pellerin alleged that the Support Judgment, as modified by this Court, superseded the Consent Judgment once the Louisiana Supreme Court denied Mr. Pellerin’s application for a writ of certiorari.

March 29,1999

Mr. Pellerin filed an exception of no cause of action and of no right of action in response to Ms. Pellerin’s January 20, 1999 rule. Although Mr. Pellerin styled his exception as an exception of no cause of action and no right of action, it was, in effect, really an exception of res judicata. Mr. Pellerin argued that during the pen-dency of the devolutive appeal of the Support Judgment, the trial court retained jurisdiction to enforce the Support Judgment. Mr. Pellerin further argued that Ms. Pellerin could have asked the trial court to require him to pay $1,879.00 in monthly child support payments during that time. Instead, she sought only to have the trial court order him to pay mortgage payments, which were approximately $1,000.00 per month. Therefore, Mr. *772 Pellerin contended that the judgments | srendered against him that ordered him to pay only the mortgage payments sought by Ms. Pellerin were res judicata with respect to the issue of how much child support he owed during the time periods affected by those judgments.

November 6, 2000

The trial court rendered a judgment (the “Exception Judgment”) granting Mr. Pellerin’s exception of no cause of action and denying his exception of no right of action. In his reasons for judgment the trial court judge stated that “[i]t is this Court’s position that any cause for a determination of and payment of past due support for any period arising on or after March 21, 1997 up through and including August 19, 1998 is extinguished and merged into each of the final judgments rendered during that period.”[8]

December 5, 2000

Ms. Pellerin was granted a devolutive appeal from the Exception Judgment.

April 17,2002

Ms. Pellerin filed a rule to collect past due child support and to change the method of payment of the child support payments so that Mr. Pellerin’s employers would make payments directly to Ms. Pellerin. In the rule Ms. Pellerin alleged that Mr. Pellerin had not timely paid his child support payments since the Exception Judgment was rendered, which was almost a year and a half earlier. Ms. Pellerin additionally alleged that the current monthly child support payment was $1,879.00, that the requirement that Mr. Pellerin pay this amount was not suspended during the appeal of the Support Judgment, which was affirmed by this Court on June 17, |91998, as to the amount of child support, and that she needed an increase in the monthly child support amount of $1,879.00 because of changes in circumstances.

May 15, 2002

This Court rendered its opinion (the “Appellate Opinion”) in connection with the appeal of the Exception Judgment. This Court reversed the trial court’s Exception Judgment, which, on the basis of the doctrine of res judicata, had dismissed the Enforcement Rule. The case was remanded by this Court to the trial court for a trial on the Enforcement Rule. Mr. Pellerin subsequently filed an application for rehearing on the appeal.[9] August 23, 2002
Ms. Pellerin filed an emergency rule for contempt and for child support. She alleged that she was in immediate need of child support to care for her two children and that Mr. Pellerin had not paid the child support in the amount of $1,879.00 that was owed for each of the months of July and August of 2002.

September 30,2002

Ms. Pellerin filed an expedited rule for contempt and child support, alleging that Mr. Pellerin had not paid child support for the month of September 2002. Ms. Pelle-rin alleged that Mr. Pellerin was in arrears in the payment of child support in the total amount of $58,267.33.

October 23, 2002

This Court granted Mr. Pellerin’s application for a rehearing of the Appellate Opinion, withdrew that opinion, and issued a new opinion (the “Rehearing Opinion”) in lieu of the Appellate Opinion. Pellerin v. Pellerin, 2001-1877 (La.App. 4 Cir. 10/23/02), 832 So.2d at 993. The Rehear *773 ing Opinion affirmed the Exception Judgment. This Court found that although Ms. Pellerin did not explicitly agree to a change in the amount of child support, she nevertheless accepted a change in the amount of child support when she sought compliance with the Consent Judgment rather than the Support Judgment. Therefore, this Court held that Ms. Pelle-rin’s continued acceptance of less child support than she was entitled to receive was a “tacit agreement to a modification” of the Support Judgment. 2001-1877, p. 10, 882 So.2d at 993. This Court concluded that any request for arrearages after the date the Enforcement Rule was filed on January 20, 1999, must be directed to the trial court.
February 7, 2003
The Louisiana Supreme Court issued its finding that Ms. Pellerin’s application for a writ of certiorari was not timely filed and, therefore, was not considered.

July 11, 2003

The trial court rendered a judgment (the “Instant Judgment”) holding that pri- or to January 20, 1999, the date the Enforcement Rule was filed, all child support due and owing was extinguished by Mr. Pellerin’s satisfaction of the contempt judgments against him. The trial court also held that beginning January 20, 1999, the amount of child support owed by Mr. Pellerin was $1,879.00[10] per month. Additionally, the trial court ordered that child support arrearage owed by Mr. Pellerin for the time period beginning January 20, 1999, and ending June 30, 2003, was $41,132.27. The payment of that amount was made executory upon all Inappeals from the Instant Judgment becoming final. In calculating the amount of the arrearage, Mr. Pellerin was given credit for the tuition that he paid for the children’s schooling after January 20,1999. He was denied credit for any sums paid for tuition prior to that date. Finally, the trial court held that if the Instant Judgment is reversed on appeal and Mr. Pellerin is found to be obligated for only $1,000.00 per month in child support, he will be entitled to a credit in the amount of $6,232.73 for amounts he has already paid. The trial court judge rendered the Instant Judgment based on her interpretation of the Rehearing Opinion.
DISCUSSION

Assignments of Error

Assignment of Error No. 1: Ms. Pellerin had no cause of action to seek support in the amount of $1,879.00 per month, and the trial court’s judgment was contrary to the provisions of La. C.C.P. arts. 1951 and 3946.
La. C.C.P. art. 1951 reads as follows:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
La. C.C.P. art. 3946 reads as follows:
A. When a payment of support under a judgment is in arrears, the party entitled thereto may proceed by contradictory motion to have the amount of past due support determined and made executory. On the trial of the contradictory motion, the court shall render judgment for the amount of past due support.
*774 B. The same rules and procedures apply when an installment payment of an award for contributions made to a spouse’s education or training is in arrears.
Mr. Pellerin argues that under the Code of Civil Procedure articles he has cited, the child support amount cannot be modified by the Instant Judgment. His 1 -^rationale for this argument is that the Exception Judgment stated that his child support obligation “remains at $1,000 per month unless and/or until otherwise modified,” We note, however, that this statement regarding the amount of child support was made in the trial court’s reasons for judgment, not in the Exception Judgment. In Greater New Orleans Expressway Commission v. Olivier, 2002-2795, p. 3 (La.11/18/03), 860 So.2d 22, 24, the Louisiana Supreme Court stated that “[a] judgment and reasons for judgment are two separate and distinct documents.” The Supreme Court further said that “[a]p-peals are taken from the judgment, not the written reasons for judgment.” Id.
We also note that in the Rehearing Opinion, this Court stated that “we do not believe that the trial court may make this broad a ruling [the modification of the Support Judgment to reduce the monthly child support payments to $1,000] by merely granting an exception of no cause of action.” 2001-1877, p. 8, 832 So.2d at 993. This Court then said that “if we determine that the trial court correctly concluded that the March 1997 judgment [the Support Judgment] had been modified, the modification would only be effective until January 1999.”[11] Id.
In the instant case, the Exception Judgment was the judgment that was appealed. The holding of the Exception Judgment that was affirmed in the Rehearing Opinion was the trial court’s decision “that the Exception of No Cause of Action filed by Jerome Joseph Pellerin is hereby granted.” The exception of no cause of action was based on the argument that Ms. Pelle-rin was precluded from retroactively enforcing the Support Judgment, because the prior adjudications of child support were res judicata as to the amount of child support owed for the time [ ^periods covered by those judgments. Mr. Pellerin argues that because Ms. Pellerin accepted less than she was entitled to receive, she is now precluded from claiming that she is owed additional amounts. The amount of the child support obligation was not addressed in the Exception Judgment, only in the trial court’s reasons for judgment. Therefore, we find that Mr. Pellerin’s first assignment of error is without merit.
Assignment of Error No. 2: From January 1999 through the date of the hearing, Ms. Pellerin is collaterally estopped from seeking child support arrearages allegedly accrued under the March '97 judgment at the rate of $1,879 per month.
Mr. Pellerin argues that because the trial court stated in the reasons for judgment issued in connection with the Exception Judgment that the child support owed by Mr. Pellerin “remains at $1,000 per month unless and/or until otherwise modified,” Ms. Pellerin is precluded from seeking child support in excess of $1,000 per month until the statement in the Reasons for Judgment is modified. Again we find that the Exception Judgment does not address the amount of child support. Because the Exception Judgment, not the reasons for judgment, was appealed, we find Mr. Pellerin’s second assignment of error to be without merit.
*775 We also note that Mr. Pellerin alternatively argues that Ms. Pellerin’s acceptance of mortgage payments “is tacit acceptance to a further modification; and that as [sic] result, Faulkner [Ms. Pellerin] is collaterally estopped from seeking any support at the rate of $1,879.00 per month.” We strongly disagree with this assertion.
It is clear from the record that Ms. Pellerin accepted the mortgage payments, not because she tacitly agreed to a reduction in the amount of child support owed Into her under the Support Judgment, but because she feared foreclosure of the mortgage on the family home and the resultant loss of that home as a place for her and the children to live. We find that she asked the trial court to order Mr. Pellerin to pay the mortgage payments, because she was doing what was necessary at the time to avoid triggering an imminent foreclosure of the mortgage on the family home. The child support payments owed by Mr. Pellerin were for the benefit of his children, and his wife clearly did not intend to tacitly reduce those payments to the detriment of her children just because she was forced to resolve a crisis that could have led to the loss of the family home though a foreclosure proceeding. This assignment is without merit.
Assignment of Error No. 3: To the extent relief could be granted at a hearing pursuant to La. C.C.P. art. 3946, the trial court was without authority to grant relief to any date prior to July 11, 2003.[12]
La. C.C.P. art. 3946 provides in relevant part as follows:
A. When a payment of support under a judgment is in arrears, the party entitled thereto may proceed by contradictory motion to have the amount of past due support determined and made executory. On the trial of the contradictory motion, the court shall render judgment for the amount of past due support.
Mr. Pellerin argues that “[d]uring the appellate process, Judge Medley’s grant of a modification to Pellerin’s support obligation created a right in favor of the successful trial court litigant that remained irrevocable and unmodifiable.” Once again Mr. Pellerin is basing his argument upon a statement made in the reasons for judgment issued in connection with the Exception Judgment, not upon the Exception Judgment itself.
|1fiHe also argues that because Ms. Pelle-rin requested an increase in the amount of monthly child support in the pleading she filed on April 17, 2002, she acknowledged that she had tacitly accepted a reduction in the child support payments. This is not correct, however. In her pleading that was filed on April 17, 2002, she stated that “[t]he current obligation is $1, 879.00 per month.” She then alleged that because, among other things, her income had decreased and the children’s expenses had increased, the monthly amount of child support should be increased. Ms. Pellerin in no way acknowledged that she had tacitly agreed to a reduction in child support. She clearly was seeking an increase from the $1,879.00 amount she alleged was then in effect.
Mr. Pellerin has failed to support his arguments. Therefore, we find that his third assignment of error is without merit.
Assignment of Error No. 4: To the extent any relief could be granted, the trial court was without authority to grant any relief to a date earlier than the date this Court’s judgment became *776 final.[13]
Mr. Pellerin’s argument in this assignment of error is based upon his contention that the Exception Judgment modified his monthly child support obligation to $1,000.00. As discussed above, this contention is incorrect. Therefore, this assignment of error is without merit.

Analysis of the Case

We are of the opinion that the Appellate Opinion was correct in determining that the judgments pursuant to which Mr. Pellerin was allowed to purge himself of contempt by paying the mortgage payments were insufficient to support the application of the doctrine of res judicata to preclude Ms. Pellerin from enforcing 11fithe Support Judgment’s full child support award. A judgment of contempt is not necessarily res judicata as to anything other the contempt adjudication.
La. R.S. 13:4232 reads in relevant parts as follows:
B. In an action for divorce under Civil Code Article 102 or 103, in an action for determination of incidental matters under Civil Code Article 105, in an action for contributions to a spouse’s education or training under Civil Code Article 121, and in an action for partition of community property and settlement of claims between spouses under R.S. 9:2801, the judgment has the effect of res judicata only as to causes of action actually adjudicated.
(Emphasis added.) Louisiana Civil Code article 105 provides that in and after a divorce proceeding, either spouse may request, among other things, a determination regarding custody, visitation, or child support.
The relevant issues “actually adjudicated” in the contempt judgments were that Mr. Pellerin was in contempt of court and that he could purge himself of that contempt by paying the delinquent mortgage payments that Ms. Pellerin was seeking to have paid. We find nothing in the record to evidence that Ms. Pellerin waived any rights to the full amount of child support awarded to her. In fact, as stated by Judge Tobias in his partial dissent from the Rehearing Opinion, “the record on appeal affirmatively indicates that Ms. Pelle-rin’s primary interest at the hearing of the rules was the payment of the mortgage on the family home so that she and the children of the marriage would [sic] be evicted from the family home in a foreclosure proceeding.” 2001-1877, p. 2 (concurrence in part and dissent in part), 832 So.2d at 994.
|17We are bound, however, by the Rehearing Opinion. Therefore, we are constrained to hold that all child support obligations that may have been owed prior to the filing of the Enforcement Rule have been extinguished.
We find that the Support Judgment awarding child support in the monthly amount of $1,879.00 was in full force and effect on the date of the filing of the Enforcement Rule on January 20, 1999. We, therefore, agree with the trial court’s determination that Mr. Pellerin owes Ms. Pellerin child support in the monthly amount of $1, 879.00 from January 20, 1999 until the child support obligation contained in the Support Judgment is expressly and properly modified.
CONCLUSION
We find that the trial court correctly determined the amount of child support owed by Mr. Pellerin to Ms. Pellerin. The judgment of the trial court is hereby affirmed.
AFFIRMED.
*777 GORBATY, J., dissents with reasons.
BELSOME, J., dissents with reasons assigned by Judge GORBATY.

. Pellerin v. Pellerin, 2001-1877 (La.App. 4 Cir. 10/23/02), 832 So.2d 988, writ untimely and not considered, 2002-2903 (La.2/7/03), 836 So.2d 83; Pellerin v. Pellerin, 97-2085 (La.App. 4 Cir. 6/17/98), 715 So.2d 617, writ denied, 98-1940 (La. 10/30/98), 727 So.2d 1167.

. The record does not reflect whether or not the mortgage payments were voluntarily paid, but there is nothing in the record before us to indicate that Mr. Pellerin was subsequently ordered by the trial court to make these payments.

. The Consent Judgment only established an “interim amount” of child support. Ms. Pellerin filed this motion to establish the amount of ongoing child support.

. The judgment was not signed until December 22, 1997, three days after it was rendered.

. The Judgment was rendered on February 17, 1998, but it was not signed until February 26, 1998.

. A judgment of divorce was granted on August 15, 1997. Alimony pendente lite, alimony owed during the pendency of a divorce action, was terminated by a final judgment of divorce. Wascom v. Wascom, 96-0125 (La.1997), 691 So.2d 678. The law regarding alimony pendente lite has changed, however. La. C.C. art. Ill, which became effective January 1, 1998, provides for interim spousal support, and the interim allowance may remain in effect after the divorce judgment is final.

. Although the record reflects that the Enforcement Rule was filed on January 7, 1999, various documents in this proceeding, including the opinions of this Court, state that it was filed on January 20, 1999. To avoid confusion the filing date in this opinion will also be referred to as January 20, 1999.

. We cannot determine from the record that is before us the reason that the trial court judge designated the August 19, 1998 date.

. The application for rehearing is not included in the record that is before us.

. The record sometimes refers to the child support amount as $1,897.00, but the amount should, in fact, be $1,879.00.

. The Enforcement Rule was filed in Janu-aiy of 1999.

. July 11, 2003 was the date of the Instant Judgment, which is the judgment now being appealed.

. This refers to the Rehearing Opinion, the date of which is October 23, 2002.